IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO: \_\_\_\_ - \_\_\_\_ - \_\_\_\_ - \_\_\_\_

| | |
|---|---|
| DR. ELIZABETH GAIL MARSAL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>) | COMPLAINT<br>AND JURY TRIAL DEMAND |
| EAST CAROLINA UNIVERSITY, a )<br>constituent institution of the University of )<br>North Carolina, Dr. James F. Anderson, in his )<br>individual capacity and official capacity, )<br>Dr. Madhava Bodapati, in his individual )<br>and official capacity, Dr. Margie Gallagher, in her )<br>individual and official capacity, Dr. Marilyn )<br>Sheerer, in her individual and official capacity, )<br>Dr. Steve Ballard, in his individual and official )<br>capacity, )<br>Defendants. ) | |

## COMPLAINT

Plaintiff, Dr. Elizabeth Gail Marsal, by and through her undersigned counsel, complains of Defendants East Carolina University, Dr. James Anderson, in his individual and official capacity, Dr. Madhava Bodapati, in his individual and official capacity, Dr. Margie Gallaher, in her individual and official capacity, Dr. Marily Sheerer, in her individual and official capacity, and, Dr. Steve Ballard, in his individual and official capacity, as follows:

1

## I. NATURE OF THE ACTION

1. This is a civil action seeking back pay, equitable relief, and damages pursuant to the Civil Rights Act of 1964, 42 U.S.C. §2000e, and the amendments thereto, and pursuant to 42 U.S.C. §1981a, arising from defendant's unlawful discrimination against plaintiff on account of her sex and seeks, back pay, equitable relief, and damages pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2611 et. seq.. Plaintiff also seeks damages for deprivation of rights under the Fourteenth Amendment of the United States Constitution, pursuant to 42 U.S.C. §1983 against Defendants Anderson, Bodapati, Gallagher, Sheerer, and, Ballard, in their individual capacities and for deprivation of rights under the First Amendment of the United States Constitution against Defendants Anderson and Bodapati in their individual capacities.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction of the claims herein pursuant to 42 U.S.C. §2000e as well as 28 U.S.C. §1331 in that such claims arise under the laws of the United States.

3. Venue is proper in this judicial district pursuant to 42 U.S.C.§2000e-5(f) and 28 U.S.C. §1391 in that at all times relevant, Plaintiff resided in this district, currently resides in this district, and the violations of law complained of herein all occurred in this judicial district.

4. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission. On April 23, 2009 a Notice of Right to Sue was mailed to the Plaintiff, via U.S. mail. Plaintiff has complied with all administrative prerequisites in order to bring this action.

## III. PARTIES

5. Plaintiff Dr. Elizabeth Gail Marsal (hereinafter "Gail Marsal" or "Marsal") is a female citizen of the United States and of the State of North Carolina. At all times relevant to this action, plaintiff was a resident of Pitt County, North Carolina, and was employed by the Defendant East Carolina University, in Greenville, North Carolina, as a tenure track assistant professor in the Department of Criminal Justice.

6. Defendant East Carolina University ("ECU") is a constituent member of the University of North Carolina organized pursuant to N.C. Gen. Stat. §116 *et. seq.* and an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. seq., as well as the Family Medical Leave Act, 29 U.S.C. §2611(4).

7. Defendant, Dr. James F. Anderson (hereinafter "Anderson"), is, upon information and belief, a citizen and resident of Pitt County, North Carolina, and, at all times relevant to this action, was the Chair of the Department of Criminal Justice and the Plaintiff's supervisor.

8. Defendant Madhava Bodapati (hereinafter "Bodapati"), is, upon information and belief, a citizen and resident of Pitt County, North Carolina, and at all times relevant to this action was a member of the tenure and promotion committee of the Department of Criminal Justice, East Carolina University.

9. Defendant Margie Gallagher (hereinafter "Gallagher") is, upon information and belief, a citizen and resident of Pitt County, North Carolina and at all times relevant to this action served as the Dean of the College of Human Ecology, East Carolina University.

10. Defendant Marilyn Sheerer (hereinafter "Sheerer") is, upon information and belief, a citizen and resident of Pitt County, North Carolina, and at all times relevant to this action served as the Provost and Vice-Chancellor for Academic Affairs at East Carolina University.

11. Defendant Steve Ballard (hereinafter "Ballard") is, upon information and belief, a citizen and resident of Pitt County, North Carolina, and at all times relevant to this action served as the Chancellor at East Carolina University.

## IV. FACTUAL BACKGROUND

12. Plaintiff Gail Marsal was employed as a tenure track assistant professor in the Department of Criminal Justice at East Carolina University since August 2001. Prior to becoming a tenure track faculty member, she was a clinical instructor in the department. Marsal holds a Ph.D. in Human Services with a concentration in Criminal Justice. As required by the university, Plaintiff engaged in an active program of scholarly research. At the time of her application for tenure, Plaintiff had eleven (11) published articles in peer-reviewed publications in her discipline. Plaintiff was a competent teacher and consistently received evaluations of her teaching at or above those of her peers. Plaintiff fulfilled requirements for service to the department, university, and the community and was consistently rated positively on her performance of those duties.

13. As required by the university, Plaintiff received an annual evaluation at the end of each academic year of her tenure track which was completed by the Department Chair for the Criminal Justice Department. Between 2001 and 2006 Plaintiff received overall ratings of her performance of either "Outstanding" or "Very Good."

14. As part of the evaluation process for achieving tenure, Plaintiff was also provided with "progress toward tenure" letters prepared by the department's tenure and promotion committee in consultation with the department chair. With one exception, between 2003, when Plaintiff received the first such letter and 2007 when Plaintiff received the last such letter Plaintiff's progress toward tenure letters told her that she was making satisfactory progress toward achieving tenure in the university. The single exception was during the academic year for 2004-2005 where Plaintiff had served as the interim Chair for the department; the dean of the college serving at that time noted that Plaintiff's having to serve in an administrative capacity interfered to some extent with her ability to perform the work required of a tenure track faculty member. During the following academic year, 2005-2006, Defendant Anderson, in his role as the department chair, wrote in Plaintiff's annual evaluation, "…it is my opinion that Dr. Marsal has worked assiduously to achieve the recommendations that were spelled out in her last Progress Toward Tenure letter. Therefore, it is for these reasons that I feel she merits [an] outstanding evaluation."

15. On or about April 10, 2007 Plaintiff received her annual evaluation from Defendant Anderson. Defendant Anderson gave Plaintiff an overall rating of "Very Good" for her work during the 2006-2007 academic year.

16. On or about May 1, 2007, Plaintiff received her final Progress Toward Tenure letter prepared jointly by the department's tenure and promotion committee along with the department chair, Defendant Anderson. The letter stated, "Overall, as a probationary faculty member, you have demonstrated the level of dedication and motivation to make satisfactory progress towards tenure. Your research efforts are clearly being perceived in a very

5

positive manner by your peers and colleagues and you have already established your willingness to work collaboratively with others."

17. On May 2, 2007, Plaintiff sent an email message to Defendant Anderson and Defendant Gallagher notifying them that she was pregnant and intended to take medical leave for the Fall semester, pursuant to the Family Medical Leave Act and East Carolina University's Faculty Serious Illness and Disability Policy.

18. On June 20, 2007, the University Provost approved Plaintiff's request for leave beginning August 20, 2007. The August 20th date was for the convenience of the university as that date signified the start of the Fall 2007 academic semester.

19. Because the review process for a tenure decision requires a considerable amount of time, the university requires tenure candidates to submit their formal applications for tenure at the start of their sixth (6th) academic year. On August 31, 2007, Plaintiff's Personnel Action Dossier ("PAD") was delivered to the Department of Criminal Justice (hereinafter "the department") to begin the formal process of review by the department and other university administrators.

21. While Plaintiff was on FMLA, Defendant Anderson selected scholarly research articles from her PAD to submit to external reviewers, a process required by the university.

22. While Plaintiff was on FMLA, Defendant Bodapati, in his capacity as the Chair of the department's tenure and promotion committee, requested that Plaintiff supply additional documents to the committee.

23. On September 22, 2007, Plaintiff gave birth to her son.

24. On October 9, 2007, the department's tenure and promotion committee voted to confer permanent tenure on the Plaintiff.

26. On October 31, 2007, Plaintiff received a notice from Defendant Bodapati that the tenure and promotion committee's vote was two votes in favor and one vote against the conferral of permanent tenure. Defendant Bodapati was the dissenting vote on the tenure and promotion committee.

27. On November 6, 2007, Defendant Anderson advised Plaintiff that he had recommended against tenure.

28. In communicating the respective decisions of the tenure and promotion committee and the department chair, neither Defendant Bodapati nor Defendant Anderson advised the Plaintiff that they had written lengthy narratives in support of their votes against tenure and that Bodapati's narrative had been forwarded to Anderson prior to Anderson making his decision, and, both Anderson's and Bodapati's narratives were forwarded to the Dean, Defendant Gallagher, as part of the material for Defendant Gallagher to consider prior to making her recommendation regarding Plaintiff's tenure application.

29. On November 13, 2007, Defendant Anderson advised the Plaintiff that his narrative was available at the department's office, on the East Carolina University campus, for the Plaintiff to review.

30. On November 14, 2007, Defendant Gallagher brought to Plaintiff, at Plaintiff's home, the narratives that had been prepared by Defendant Anderson and Defendant Bodapati. Anderson's narrative was sixteen pages long and eighteen appendices which he was bound by a professional document preparer. Bodapati's narrative was twelve pages long.

7

31. Not only did Anderson's and Bodapati's narratives allege that Plaintiff's scholarly research was of poor quality, they accused Plaintiff, falsely, of ethical transgressions both in the research process as well as in the application for tenure. Plaintiff denied then and continues to deny that Anderson and Bodapati's evaluations have any factual basis.

32. Dean Gallagher instructed Plaintiff that she had seven (7) days to respond to both narratives before Dean Gallagher would make her recommendation regarding Plaintiff's application for tenure. Defendant Gallagher told Plaintiff that she had to "write the best reply that [she] could possibly write" to the allegations made by Anderson and Bodapati.

33. Defendant Gallagher also requested that Plaintiff sign a statement indicating affirmatively that Plaintiff wanted the tenure review process to continue. Plaintiff refused to sign such a statement.

34. Plaintiff is aware of, and based thereon alleges, that similarly situated male faculty employees on leave, pursuant to the Family Medical Leave Act and/or the Faculty Serious Illness and Disability Policy have never been required to take undertake a task as difficult, within as short a time period, requiring thoughtful and deliberative analysis, and, one that was, furthermore, so central to continued employment as the task required of Plaintiff by Defendant Gallagher.

35. Bodapati's and Anderson's narratives were considered by Defendant Gallagher, who recommended against tenure for the Plaintiff and were considered by Defendants Sheerer and Ballard, who also recommended against conferral of tenure for the Plaintiff.

36. The East Carolina University Faculty manual contains the governing principles and procedures for all faculty personnel decisions. Appendix D, Section IV, E, 3 provides that

the tenure and promotion committee member's votes are to be indicated by secret ballot. Section IV also states that "confidentiality must be maintained when conducting any substantive business pertaining to initiation, review, conferral of permanent tenure . . . ." Furthermore, Appendix D of the faculty manual also provides that the tenure and promotion committee is to prepare a single narrative.

37. As a result of the Defendants' conduct, Plaintiff has been denied continued employment at the university, has suffered damage to her academic career, and other emotional pain and suffering.

## IV. CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF AGAINST DEFENDDANT EAST CAROLINA UIVERITY**
**SEX DISCRIMINATION IN VIOLATION OF 42 U.S.C. §2000e et. seq.**

38. Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 37 and incorporates the same herein as though fully set forth.

39. By its actions, East Carolina University has treated the Plaintiff differently than similarly situated male because of her sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et. seq. More specifically,

a) Plaintiff's application for tenure was evaluated more harshly and according to more difficult standards than those of similarly situated male employees;

b) Although pregnancy is identified as a legitimate reason for taking leave under both of the policies under which Plaintiff took leave, Defendant treated Plaintiff's leave differently than similarly situated male employees taking leave under these policies. Defendant required Plaintiff to

9

perform significant duties associated with her job and evaluated her performance of those duties as though she did not have a qualifying condition for a leave of absence from her duties at the university, in violation of the Pregnancy Discrimination Act, 42 U.S.C. §2000e-(k).

40. By its actions, the Defendant has discriminated and continues to discriminate against plaintiff with respect to her employment on account of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, and Defendant has therefore committed unlawful employment practices, entitling plaintiff to relief.

41. Proximately, directly, and solely as a result of ECU's discrimination against Plaintiff on account of her sex, plaintiff has suffered and continues to suffer damages consisting of lost employment benefits, damage to her academic career, great mental distress, and other damages. Plaintiff is, therefore, entitled to recover compensatory damages, back pay, and other equitable relief as provided by law.

**SECOND CLAIM FOR RELIEF**
VIOLATIONS OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION PURSUANT TO 42 U.S.C. §1983 AGAINST DEFENDANT ANDERSON, DEFENDANT BODAPATI, DEFENDANT GALLAGHER, DEFENDANT SHEERER, AND, DEFENDANT BALLARD, IN THEIR INDIVIDUAL CAPACITIES

42. Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 41 and incorporates the same herein as though fully set forth herein.

43. Acting under color of state law, Defendants treated Plaintiff differently than other similarly-situated employees because of her sex, female and their discriminatory treatment of the Plaintiff was not related to any important governmental objective.

44. Anderson treated Plaintiff differently than similarly-situated male employees when he recommended against her tenure and, in so doing, constructed an elaborate pretext to support his recommendation. Furthermore, Anderson treated Plaintiff differently than other similarly situated male employees when he, in violation of university policies and procedures, constructed a narrative accusing Plaintiff of unethical conduct and then submitted that narrative to higher level administrators involved in the tenure decision for their consideration. Anderson was deliberately indifferent to Plaintiff's rights when he attempted to submit his narrative without even informing the Plaintiff of its existence. Anderson also treated Plaintiff differently than similarly situated male employees in April 2008 when he completed Plaintiff's annual evaluation and gave Plaintiff lower scores while noting that the low scores due to being out on maternity leave. However, upon information and belief, a similarly situated male faculty member who was on leave to care for his elderly parents did not receive lower scores because of his absence; he was simply not rated in those areas that he could not fulfil during his absence.

45. Bodapati treated Plaintiff differently than similarly-situated male employees when he voted against the Plaintiff's application for tenure and, in so doing, constructed an elaborate pretext to support his vote. Bodapati treated Plaintiff differently than similarly-situated male employees when, in violation of university policies and procedures, he revealed the vote of the tenure and promotion committee, and submitted his narrative to higher level administrators involved in the tenure decision for their consideration. Bodapati was deliberately indifferent to Plaintiff's rights when he submitted his narrative to the department chair without even informing the Plaintiff of its existence and when he

11

attempted to submit his narrative to higher level administrators without notifying the Plaintiff of its existence.

46. Gallagher treated Plaintiff differently than similarly-situated male employees when she accepted the narratives submitted by Defendants Anderson and Bodapati for consideration and when she required the Plaintiff to respond to the narratives with "the best reply that [she] could possibly write," within a short and inflexible deadline, even though Plaintiff was on medical leave from her university duties.  Furthermore, Defendant treated Plaintiff differently than similarly situated male employees when she continued to consider Plaintiff's tenure application although Plaintiff had declined to sign a statement affirmatively indicating that she wanted the process to continue while she was on leave.

47. Defendants Sheerer and Ballard treated Plaintiff differently than similarly situated male employees when they permitted Plaintiff's application for tenure to be tainted by the materials submitted by Bodapati and Anderson, when those materials were clearly in violation of university policy and procedure and where they knew, or should have known, that Plaintiff was not given a fair opportunity to respond to Bodapati's and Anderson's allegations.  Defendant Sheerer was deliberately indifferent to the Plaintiff's rights when she met with the tenure and promotion committee, but in doing so, made only the minimal effort to meet university requirements and refused to allow the members of the committee who had supported Plaintiff's application for tenure to speak on Plaintiff's behalf.  Defendants Ballard and Sheerer ratified the conduct of Defendants Anderson, Bodapati, and, Gallagher although the knew or should have known that the conduct of the other Defendants violated Plaintiff's federally protected rights.

12

Case 4:09-cv-00126-FL   Document 1   Filed 07/22/09   Page 12 of 16

48. As an affirmative consequence of Anderson's and Bodapati's conduct and as an affirmative consequence of Defendants Gallagher's, Sheerer's, and, Ballard's deliberate indifference and/or tacit authorization of Anderson's and Bodapati's conduct, Plaintiff has experienced a deprivation of her rights under federal law to receive equal treatment.

49. Defendants' disparate treatment of plaintiff constitutes a violation of the Equal Protection clause of the Fourteenth Amendment to the U.S. Constitution.

50. Said misconduct by these Defendants, proximately caused Plaintiff substantial damages including but not limited to front pay loss, and back benefit loss, loss of earning capacity, emotional distress, loss of career and reputation, and humiliation and embarrassment. The Plaintiff will continue to suffer these damages in the future.

51. Said misconduct by the individual Defendants was willful, malicious and/or intentional and/or undertaken in reckless disregard of Plaintiff's civil rights thereby entitling her to an award of punitive damages against these defendants in their individual capacities.

52. Defendants failed to act reasonably to protect Plaintiff's clearly established legal rights.

**THIRD CLAIM AGAINST DEFENDANT EAST CAROLINA UNIVERSITY, VIOLATION OF THE FAMILY MEDICAL LEAVE ACT**

53. Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 52 and incorporates the same herein as though fully set forth.

54. The Defendant violated the Family and Medical Leave Act (29 U.S.C. §2611 et. seq.) when it terminated Plaintiff's employment for reasons related to her Family Medical Leave. The FMLA provides that an employer cannot use the taking of FMLA as a negative factor in employment actions. When Defendant, through its administrators, required Plaintiff to work

while on leave and used the quality of the work she submitted *while she was on leave*, as a decisive factor in evaluating Plaintiff's tenure application, the Defendant interfered with Plaintiff's substantive rights under the Family Medical Leave Act.

55. The Defendant violated the Family and Medical Leave Act (29 U.S.C. §2611 et. seq.) when, in Anderson's April 2008 annual evaluation of Plaintiff he stated that Plaintiff received low scores due to being out on maternity leave. Defendant interfered with Plaintiff's substantive rights under the Family Medical Leave Act.

56. Defendant's conduct was willful, wanton, and malicious, and, evinced a reckless disregard for Plaintiff's rights under this law. Plaintiff is thereby entitled to equitable relief, and, compensatory and liquidated damages, as by law allowed.

## V.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays the court:

1. AS TO THE FIRST CLAIM FOR RELIEF:

    a. For judgment against the Defendant in such sums as a jury may award as compensatory and punitive damages, pursuant to 42 U.S.C. §1981a, for the violation of Plaintiff's civil right to be free from discrimination in employment;

    b. For a judgment declaring the employment practices of Defendant alleged herein to be unlawful;

    c. For an order requiring the Defendant to make whole the Plaintiff by reinstating her to the position of employment she would have enjoyed had Defendant not engaged in its unlawful practices, by providing Plaintiff appropriate back pay, front pay, and

14

reimbursement for lost benefits in an amount to be shown at trial, and by granting Plaintiff other appropriate affirmative relief;

d.     For recovery of Plaintiff's costs herein, including a reasonable attorney's fee pursuant to 42 U.S.C.§1988.

2.     AS TO THE SECOND CLAIM FOR RELIEF:

a.     The Court declare that defendants' actions are unlawful and unconstitutional, violating the Fourteenth Amendment of the U.S. Constitution;

b.     The Court permanently enjoin defendants, their agents, successors, and employees from engaging in or continuing any and all practices found by this Court to be unlawful or unconstitutional;

c.     Plaintiff recover lost employee benefits she would have received but for defendants' unlawful acts;

d.     Plaintiff recover of defendants compensatory damages in amounts to be proved at trial;

e.     Plaintiff recover of defendants in their individual capacity, punitive damages;

f.     Plaintiff recover the costs of this action, including a reasonable attorneys' fee, as by law allowed.

3.     AS TO THE THIRD CLAIM FOR RELIEF:

a.     For judgment against the Defendant in such sums as a jury may award as compensatory and punitive damages, pursuant to the Family Medical Leave Act;

b.     For an order requiring the Defendant to make whole the Plaintiff by reinstating her to the position of employment she would have enjoyed had Defendant not engaged in its

unlawful practices, by providing Plaintiff appropriate back pay, front pay, and reimbursement for lost benefits in an amount to be shown at trial, and by granting Plaintiff other appropriate affirmative relief, including prejudgment interest; and

c.	For recovery of Plaintiff's costs herein, including a reasonable attorney's fee pursuant to the provisions of law.

4. For a trial by jury as to all issues so triable;
5. For such other relief as to the court may seem just and proper.

Respectfully submitted, this the 22nd day of July 2009.

THE LEONLAW FIRM, P.C.

_____/s/ Mary-Ann Leon_____
MARY-ANN LEON.
N.C. State Bar No. 26476
Post Office Box 20338
Greenville, N.C. 27858
Tel: (252) 830-5366
Fax: (252) 830-9366
Email: maleon@leonlaw.org

16