# ARCHIVED INDEX OF *ECU FACULTY MANUAL* INTERPRETATIONS
1990-2010

I05-19     2-22-05     Code Unit Changes
Faculty Senate Resolution #05-07, February 22, 2005
ECU Faculty Manual, Appendix L, Section D.1.f.

An interpretation is needed to guide units wanting to move an "uncoded" department or disciplinary group from a coded unit to another coded unit. Section D.1.f. references "renaming a code unit, in addition, changes in unit nomenclature shall be approved by UNC General Administration before such changes become effective." The approved interpretation to Section D.1.f. of Appendix L. is: "Changes in unit nomenclature" referenced in Appendix L., Section D.1.f. include moving groups of faculty and/or disciplines from one coded unit to another. This type of move does not require UNC General Administration approval."

I03-18     4-22-03     Personnel Committee
Faculty Senate Resolution #03-33, April 22, 2003
ECU Faculty Manual, Appendix L, Section IV.A.3.

The unit personnel committee recommends the initial rank of faculty appointments.

I01-17     2-27-01     New academic units
Faculty Senate Resolution #01-12, February 27, 2001
ECU Faculty Manual, Appendix L, Section D.2.

A new professional school's proposal to organize into self-governing autonomous units shall be reviewed by the Faculty Governance Committee and the Faculty Senate as outlined in Appendix L section C.2. Vestigial codes are included with the proposal for the new school and are approved by the Educational Policies and Planning Committee, but subsequent unit codes shall be submitted to the Unit Code Screening Committee.

I01-16     2-27-01     Unit Personnel Committee
Faculty Senate Resolution #01-11, February 27, 2001
ECU Faculty Manual, Appendix D, Section IV.A.3.

Unit administrators are ordinarily excluded from unit Personnel Committee discussions concerning candidates for appointment, re-appointment, promotion, or permanent tenure, and must be excluded from any meeting where votes are taken. However, at the invitation by a majority vote of the membership of the personnel committee, a unit administrator may meet with the committee to discuss initial appointments.

I00-15     11-14-00     Phrase "spring term"
Faculty Senate Resolution #00-31, November 2000, Appendix D.,
Section IV. subsection E.

The sense of the Committee is to understand the phrase "spring term" to refer to the spring semester that ends with Commencement exercises. Therefore, it is advised that all academic divisions use the same dates for nine and twelve month faculty when personnel issues are involved.

I00-14     4-18-00     Faculty in academic departments may not evaluate related faculty
Faculty Senate Resolution #00-21, April 2000, Appendix D. Section IV.

Related faculty within the same academic department (or other comparable institutional subdivision of employment) shall not participate, either individually or as a member of a committee, in the evaluation of related persons for appointment, reappointment, promotion, the conferral of permanent tenure, cumulative review, salary recommendations, or any other personnel action. A faculty member made ineligible for participation in the evaluation of a related person does not count for quorum purposes

and his/her ineligibility does not constitute a recommendation against the proposed personnel action.

I00-13     2-1-00     Voting Faculty Member and Quadrennial Unit Administrator Evaluation
Faculty Senate Resolution #00-3, February 2000, Appendix L.

Would the 12 month consecutive calendar month of appointment status (excluding intervening summer months) apply to faculty re-appointed to a position or appointed to a different position because there would not have been a lapse in employment at ECU?
> Interpretation - The definition of a voting faculty member in Appendix L requires that the faculty member have "regular academic faculty rank" at the time of voting. It does not place any restrictions on the type of faculty appointment when requiring that a faculty member be "in at least the twelfth consecutive calendar month of appointment (counting all intervening summer months, if any) to the faculty of the unit in which the voting is to occur...." Appendix D, II.A.1 lists the categories of faculty appointments.

Who can attend the quadrennial Unit Administrator Evaluation meeting per Appendix L.F.1.?
> Interpretation - The voting faculty of each unit shall vote on the effectiveness of the unit administrator. During September of the unit administrator's fourth year of appointment and every fourth year thereafter, the voting faculty shall discuss and vote by secret ballot on the effectiveness of the unit administrator. Given that the above procedure refers to "voting faculty shall discuss" and given that the procedure involves personnel matters, only voting faculty members should be in attendance during the discussion."

I99-12     12-7-99     Non-Concurring Personnel Recommendations
Faculty Senate Resolution #99-28, December 1999,
Appendix D, Section IV.I.

The faculty member should be informed of both concurring and non-concurring recommendations at every level, beginning with the unit administrator's recommendation and continuing up to the level where the final decision is made. The wording in the ECU Faculty Manual, Appendix D, Section IV. H. is clear that the candidate is informed of concurring recommendations. Immediately after the completion of each level of administrative review, the administrator's recommendation shall be communicated to all appropriate lower administrators, the candidate, and the committee of the unit which made the initial recommendation. Whether the candidate is to be informed is not clear for non-concurring recommendations. Since the candidate would be informed if the administrator concurred, the candidate would know that the administrator did not concur if s/he was not informed of the decision. Since the candidate would know the decision, it seems ridiculous not to communicate non-concurrence.

I99-11     2-10-99     Search Committees
Faculty Senate Resolution #99-9, March 1999, Appendix D, Section IV.G.

A search committee may fulfill the responsibilities of reviewing applications, selecting candidates, interviewing candidates, and recommending one or more candidates for the position to the unit's Personnel Committee.

I98-10     10-8-98     Cumulative Review of Permanently Tenured Faculty
Established by Brenda Killingsworth, Chair of the Faculty, Patricia Anderson, Faculty Governance Committee Chair, and Richard Ringeisen, Vice Chancellor for Academic Affairs, Appendix B.

If the unit has elected "block review" (all tenured faculty in the unit will undergo cumulative review of permanently tenured faculty (CRPTF) this year and every five years hereafter), all faculty who are currently tenured-regardless of the date tenure was awarded-should be reviewed this year. This applies to faculty who have been tenured less than five years or who were promoted less than five

years ago also. If the unit has elected "serial review" (some tenured faculty will be reviewed each year, beginning this year), all faculty who are currently tenured-regardless of the date tenure was awarded-are placed in the pool from which the random selection is made of faculty for review each year. This means faculty who have been tenured less than five years or who were promoted less than five years ago are in the pool with faculty who have been tenured or promoted more than five years ago. The random selection of faculty for review this year will be drawn from this pool. For the first CRPTF cycle, faculty who have been tenured less than five years or who were promoted less than five years ago may then undergo cumulative review less than five years after their most recent personnel action review; however, in subsequent review periods, the policy about promotion review substituting for CRPTF may apply in the unit choosing serial review. The CRPTF cycle for faculty in these units who are tenured in the future will be every five years after the awarding of tenure."

I98-9  2-11-98  Voting Faculty
Established by the Faculty Governance Committee,
Appendix L, Section A.

In reference to Appendix L and the definition of a voting faculty member, "university officers" is defined as anyone with the title "Dean" and above.

I97-8  10-14-97  Formation of Promotion Committee
Established by the Faculty Governance Committee and
Endorsed by the Faculty Senate (no resolution # assigned)
Appendix D, Section IV.A.2.

When a unit has fewer than three permanently tenured voting faculty members of sufficient rank and not holding administrative status, the next higher administrator above the unit level shall appoint permanently tenured faculty at the required rank from other units to increase the committee's membership to three, with at least two-thirds of the members being permanently tenured faculty. These appointments to the committee must be from one list of candidates selected by a vote of the permanently tenured and probationary-term faculty having rank at least equal to the candidate(s) being considered for promotion. The list forwarded to the next higher administrator by the faculty will contain at least twice the number of faculty members required to complete the membership of the committee. Before voting on the list to be forwarded to the next higher administrator, the voting faculty will ascertain that faculty members nominated to have their names placed on the list are willing and able to serve in this important capacity. The list of faculty names recommended to the next higher administrator may not be returned for revision.

I97-7  10-14-97  Formation of Tenure and Personnel Committees
Established by the Faculty Governance Committee and
Endorsed by the Faculty Senate (no resolution # assigned)
Appendix D, Sections IV.A.1 and IV.A.3.

When a unit has fewer than three permanently tenured voting faculty members not holding administrative status, the next higher administrator above the unit level shall appoint permanently tenured faculty from other units to increase the committee's membership to three. These appointments to the committee must be from one list of candidates selected by a vote of the permanently tenured and probationary-term faculty of the unit. The list forwarded to the next higher administrator by the appropriate faculty will contain at least twice the number of faculty members required to complete the membership of the committee. Before voting on the list to be forwarded to the next higher administrator, the voting faculty will ascertain that faculty members nominated to have their names placed on the list are willing and able to serve in this important capacity. The list of faculty names recommended to the next higher administrator may not be returned for revision."

I96-6  9-6-96  Voting Faculty
Established by Don Sexauer, Chair of the Faculty

Appendix L, Section A.

In reference to Appendix L and the definition of a voting faculty member, the teaching/research requirement does not apply to unit administrators (i.e. chairs of departments in the College of Arts and Sciences and deans of units) and other university officers (i.e. chancellor, vice chancellor).

I96-5     3-13-96     Reduction of Faculty Probationary Term
                              Established by the Faculty Governance Committee
                              Appendix D, Section II.C.

Appendix D states that "the normal probationary term for the professorial ranks, as established at the time of initial appointment, shall be...." This was intentional to remove ambiguity in previous versions of Appendix D. Thus, the promotion of an assistant professor to associate professor before the end of the probationary term has no effect on the original contractual probationary term. Of course, a faculty member could apply for early tenure following Section II.C.5."

I96-4     3-13-96     Off-Track Faculty Probationary Terms
                              Established by the Faculty Governance Committee
                              Appendix D, Section II.C.

In order to afford the maximum opportunity for tenure, it is the position of the Faculty Governance Committee that the probationary term for personnel hired at the professorial ranks, whose contract date occurs earlier than the beginning of the Fall semester, will be measured from the beginning of the subsequent Fall semester. Of course, a faculty member could apply for early tenure following Section II.C.5."

I94-3     2-23-94     Voting Eligibility
                              Established by Patricia Anderson, Chair of the Faculty
                              Appendix L, Section A.

Any voting faculty member has voting privileges for departmental issues except those specifically excluded by any portion of the unit code or the Faculty Manual (i.e. some personnel decisions, recommendations on code content, quadrennial evaluations). Section 604C of the UNC Code defines visiting faculty as a "special" faculty appointment, thus making any visiting faculty member ineligible to vote on excluded issues as described above, but eligible to vote on departmental issues not excluded by a unit code or Faculty Manual statement."

I93-2     3-30-93     Faculty Officers
                              Established by George Bailey, Parliamentarian
                              Appendix A, Section VII.

Officers of the Faculty, who are not members of the Faculty Senate will not have vote, count toward a quorum, or vote and occupy a seat assigned to a Faculty Senator.

I90-1     2-15-90     Personnel Files
                              Established by Ben Irons, University Attorney
                              Appendix C, Section VI.

A faculty member who willfully discloses confidential information from a personnel file or allows another to disclose such information has violated State law and University regulations and may be disciplined under University regulations. An individual faculty member such as a department chair of chair of a personnel committee who knows of a faculty member's public disclosure of confidential information but does not act has neglected his or her duties and may also be disciplined in accordance with Appendix D. The Statues clearly define confidential information. G.S. 126-23 provides that an employee's "name, age, date of original employment or appointment to the State service, current position, title, current salary, date and amount of most recent increase or decrease in salary, date of recent promotion, demotion, transfer, suspension, separation, or other change in

position classification, and the official station to which the employee is currently assigned" are matters of public record."

---

**Faculty Senate Resolution #11-92,** November 1, 2011