IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:09-CV-126-FL

| | |
|---|---|
| DR. ELIZABETH GAIL MARSAL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EAST CAROLINA UNIVERSITY, a )<br>constituent institution of the University of )<br>North Carolina; DR. JAMES F. )<br>ANDERSON, in his individual and official )<br>capacity; DR. MADHAVA BODAPATI, in )<br>his individual and official capacity; DR. )<br>MARGIE GALLAGHER, in her individual )<br>and official capacity; DR. MARILYN )<br>SHEERER, in her individual and official )<br>capacity; and DR. STEVE BALLARD, in )<br>his individual and official capacity, )<br>)<br>Defendants. ) | ORDER |

This matter comes before the court on plaintiff's motions for attorney's fees and costs and for declaratory judgment or to alter or amend the judgment (DE # 147, 155). Defendants responded in opposition as to both motions, and plaintiff filed reply in support of the motion for attorney's fees. In this posture, the issues raised now are ripe for adjudication. For the reasons that follow, plaintiff's motions are granted in part and denied in part.

## BACKGROUND

On July 22, 2009, plaintiff commenced this action by filing complaint with this court. Plaintiff allegied that defendant East Carolina University ("ECU") discriminated against her on

account of her sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., when it denied her tenure and terminated her employment. Plaintiff further alleged that ECU violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 et seq., by requiring her to work while on leave and basing its tenure decision in part on the quality of such work. Finally, plaintiff alleged that various ECU employees involved in the decision not to award her tenure, specifically defendants James F. Anderson ("Anderson"), Madhava Bodapati ("Bodapati"), Margie Gallagher ("Gallagher"), Marilyn Sheerer ("Sheerer"), and Steven Ballard ("Ballard"), deprived her of her right to equal protection under the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

On October 22, 2009, defendants answered the complaint, denying liability. Following discovery, defendants moved for summary judgment on December 15, 2010, as to all claims. The court granted defendants' motion as to plaintiff's § 1983 claims against individual defendants Bodapati, Gallagher, Sheerer, and Ballard. The court denied defendants' motion to dismiss the Title VII claims against ECU, denied defendants' motion to dismiss plaintiff's § 1983 claim against defendant Anderson, and ordered supplemental briefing on the FMLA claims against ECU. Defendants filed supplemental briefs, in which defendant ECU stated that it no longer believed it was entitled to summary judgment on plaintiff's FMLA claim based on the undisputed facts before the court. As such, the court denied as moot defendants' motion for summary judgment as to plaintiff's FMLA claim.

Trial commenced in this matter on January 24, 2012. On February 1, 2012, the jury returned verdict finding that: (1) sex was a motivating factor in defendant ECU's decision to deny plaintiff tenure and promotion; (2) defendant ECU proved by a preponderance of the evidence that it would

2

have denied plaintiff tenure and promotion even if it had not considered sex; (3) Dr. Anderson did not intentionally discriminate against plaintiff because of her sex when he decided not to recommend her for tenure an promotion; (4) the exercise of plaintiff's rights under the FMLA was a motivating factor in defendant ECU's decision to deny her tenure and promotion; and (6) that defendant ECU would have denied plaintiff tenure and promotion even if it had not considered her exercise of her FMLA rights. Based on these determinations, the jury awarded plaintiff no damages.

On February 15, 2012, plaintiff filed the instant motion for attorney's fees and costs. On March 16, 2012, before the motion for attorney's fees was ripe, plaintiff filed motion for declaratory relief or to alter the judgment.

## DISCUSSION

A. Motion for Attorney's Fees and Costs

Plaintiff seeks attorney's fees exceeding $75,000.00 for work done on this case, which spanned approximately four years and included a week long trial. Plaintiff's desired figure represents a twenty-five (25) percent decrease from the total amount of costs incurred, in recognition of the fact that plaintiff only achieved a favorable verdict as to some of her claims, and that the jury found defendants would have made the same decisions regardless of defendant ECU's consideration of plaintiff's sex or exercise of her FMLA rights. Defendants argue that the court should exercise its discretion not to allow the attorney's fees, and if the fees are awarded, that the hourly rate for plaintiff's counsel be reduced significantly.

1. Fees Warranted

Title 42 of the United States Code, section 2000e-5(g)(2) provides that on a claim in which an individual proves a violation under § 2000e-2(m), and a respondent demonstrates that the

3

respondent would have taken the same action in the absence of the impermissible motivating factors, the court

> (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and
>
> (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

42 U.S.C.A. § 2000e-5(g)(2)(B).

As both parties acknowledge, the Fourth Circuit has addressed the issue of attorney's fees under this subsection of Title VII in Sheppard v. Riverview Nursing Center, Inc., 88 F.3d 1332 (4th Cir. 1996). The Fourth Circuit set forth various standards applicable to fee requests in mixed motive cases such as this one under § 2000e-5(g)(2)(B).

> By definition, an illicit factor will have played some role in cases subject to § 2000e-5(g)(2)(B) . . . But within that category of cases, there are large differences. Some mixed-motive cases will evidence a widespread or intolerable animus on the part of a defendant; others will illustrate primary the plaintiff's unacceptable conduct which, by definition, will have justified the action taken by the defendant. The statute allows the district court to distinguish among cases that in reality are quite different.

Id. at 336. Sheppard counsels that the court can consider the relationship between the fees and the degree of plaintiff's success, specifically based on the factors as outlined by the Supreme Court in in Farrar v. Hobby, 506 U.S. 103, 112-14 (1992). Those factors, cited by the Fourth Circuit in Mercer v. Duke University, 401 F.3d 199 (4th Cir. 2005), are as follows: the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served by the litigation. Mercer, 401 F.3d at 204 (citing Farrar, 506 U.S. at 122).

As the parties acknowledge, the extent of plaintiff's relief in the instant dispute was limited. Plaintiff prevailed on her Title VII and FMLA claims to the extent the jury found that sex and

4

plaintiff's exercise of her FMLA rights were motivating factors in defendant ECU's decision not to grant plaintiff tenure. However, the jury found that defendant ECU proved the same decision would have been made regardless of the consideration of the impermissible factors. Thus plaintiff enjoyed a limited victory establishing ECU's violation of Title VII and the FMLA, but did not achieve this victory as to defendant Anderson, and was not awarded any damages. As Sheppard counsels, however, lack of success as measured simply by the amount of damages a plaintiff is awarded is not the appropriate standard. 88 F.3d at 1336. Instead, courts, "in appropriate cases," should consider the reasons why injunctive relief was or was not granted, and the extent and nature of any declaratory relief. Id.

As set forth below, declaratory relief in this case is granted to the limited extent plaintiff has requested it. Defendants have lodged no argument that the same should not be granted. However, the court's entry of a declaratory judgment in favor of plaintiff does not weight heavily in favor of an award of attorney's fees. The declaratory judgment does little more than ratify the jury's verdict. See Sheppard v. Riverview Nursing Ctr., Inc., 948 F. Supp. 502, 503 (D. Md. 1996) (on remand declining to award attorney's fees over nominal amount and citing as a reason the fact that the declaratory judgment merely ratified jury verdict). Additionally, though requested by plaintiff in the complaint, no injunctive relief was granted in this case.[1]

The next Farrar factor is the "significance of the legal issue on which the plaintiff prevailed." Mercer, 401 F.3d at 206 (citation omitted). Neither party has offered significant argument on this particular issue. While plaintiff's limited success is not to be discounted, nor does the court demean

---

[1] The injunctive relief requested by plaintiff in the complaint was for reinstatement and provision of back pay, front pay, and reimbursement for lost benefits. In light of the jury verdict in this mixed motive case, the court cannot grant the requested relief. See 42 U.S.C. § 2000e-2(g)(2)(B).

5

the significance of the jury's finding that defendant ECU violated Title VII and the FMLA, the legal issue presented here was not novel, nor did it "[give] rise to a first-of-its-kind liability determination." Mercer, 401 F.3d at 207. To the contrary, in its order granting in part and denying in part defendants' motions for summary judgment, the court noted the body of law in this circuit considering judicial review of professorial decisions. See, e.g., Jiminez v. Mary Washington Coll., 57 F.3d 369, 376 (4th Cir. 1995); Smith v. Univ. of North Carolina, 632 F.2d 316, 313 (4th Cir. 1980). While every case is different, the instant one was not novel, and as such, this factor does not weigh in favor of attorney's fees.

The final factor to be considered under Farrar is whether the litigation served a public purpose, as opposed to simply vindicating the plaintiff's individual rights. When describing this factor in Sheppard, the Fourth Circuit cited Justice O'Connor's concurring opinion in Farrar. See 506 U.S. at 121-22. Justice O'Connor provided that "success might be considered material if it also accomplished some public goal other than occupying the time and energy of counsel, court, and client." Applying that reasoning to the Farrar case, Justice O'Connor remarked that in that case, where the plaintiff achieved a *de minimis* victory on some of his constitutional claims in a § 1983 action, one would search in vain for the public purpose the litigation might have served. Id. at 122. The Sheppard court also described this factor as a more general proportionality consideration - "whether the public purposes served by resolving the dispute justifies the recovery of fees." Sheppard, 88 F.3d at 1336.

Defendants argue that the instant case was nothing more than an effort by plaintiff to redress her own claims. Plaintiff counters with an argument that even a small victory under Title VII advances the greater interests that underscore the purpose of the Act. Additionally, plaintiff offers

6

an email forwarded from an unknown sender, which plaintiff suggests is evidence that her limited victory had a larger impact.[2] Plaintiff contends the email is from an administrator with knowledge of the instant case. The email is entitled, "Trial Had an Impact at ECU," and appears to be sent to individuals involved with making tenure decisions, though whether those individuals work at ECU is not immediately apparent from the face of the document. The email outlines some procedural steps that should be taken when an incomplete personnel action dossier ("PAD") is submitted. Plaintiff argues that while the email addresses procedural issues in evaluating a tenure candidate's PAD rather than more substantive issues of discrimination or bias, the email nevertheless is evidence that plaintiff's case brought to light that "unevenness in procedures can facilitate discriminatory decision making." (Pl.'s Mot. Atty's Fees 3).

The district court in Mercer noted that this particular Farrar issue, the public purpose of the suit, has been treated differently in different courts. Mercer, 301 F.Supp.2d 454, 463. Some courts require a more compelling showing of the public good advanced. See Pino v. Locascio, 101 F.3d 235, 239 (2d. Cir. 1996) (noting that "the vast majority of civil rights litigation does not result in ground-breaking conclusions of law, and therefore, will only be appropriate candidates for fee awards if a plaintiff recovers some significant measure of damages or other meaningful relief."). Other courts, however, are more generous with what constitutes accomplishment of a public goal. See O'Connor v. Huard, 117 F.3d 12, 18 (1st Cir. 1997) (incentives to attorneys to represent civil rights litigants); Muhammad v. Lockhart, 104 F.3d 1069, 1070 (8th Cir. 1997) (encouraging government to carefully perform its constitutional duties); Cartwright v. Stamper, 7 F.3d 106, 110 (7th Cir. 1993) (a public purpose more likely served the more important the right at stake and the

---

[2] Plaintiff has redacted the name of the sender to eliminate that individual's identification.

7

more egregious the violation and also served if the plaintiff's victory had external benefits or a future deterrent effect).

Sheppard also provides some guidance as to the court's consideration of this third factor and the general proportionality considerations of whether the public purposes of the suit justify the recovery of fees. Sheppard counsels that the Farrar factors allow the court to weigh considerations of bad behavior on the part of plaintiff, or evidence of widespread or intolerable animus on the part of a defendant. See 88 F.3d at 1336. As to plaintiff's bad behavior, some evidence was offered at trial with regard to plaintiff's mishandling of a potential hire to the criminal justice department. A significant amount of evidence were presented regarding plaintiff's publishing record, which defendants argued was weaker than other tenured faculty, which plaintiff vigorously opposed. However, on the whole, any "illicit factor[s]" regarding plaintiff's behavior or job performance are not determinative for the instant issues. No evidence was presented of widespread or intolerable bias on the part of defendants. In fact, defendant Anderson was found not to have discriminated against plaintiff at all.

After careful consideration, the court finds that the public purpose served by the instant litigation is not insignificant. In the same vein, plaintiff's case was not groundbreaking, as was the case in Mercer, where as the district court noted, the Fourth Circuit described the case as one of first impression. 301 F.Supp.2d at 465. However, as in Mercer, plaintiff here did achieve a "no-so-easily obtainable victory," when the jury found that defendant ECU did use impermissible factors in making the decision whether to grant her tenure. See id. The court does not agree with defendants that plaintiff's victory was only for redress of her personal claims. To the contrary, plaintiff's limited victory revealed that defendant ECU acted in violation of Title VII and the FMLA when it made its

8

Case 4:09-cv-00126-FL Document 159 Filed 08/10/12 Page 8 of 17

hiring decisions with regard to plaintiff. This victory, while limited by the finding that defendant ECU would have acted the same way, is significant because of the purposes of Title VII and the FMLA, which prohibit hiring decisions based on impermissible factors such as sex and the taking of FMLA-designated leave. While the court does not place great weight on the email exhibit plaintiff offers to show that the lawsuit had an impact at ECU, to the extent it does reveal an effort to make the tenure review process more fair for all applicants, the exhibit supports the court's findings herein.

Lastly, Sheppard counsels that a court may consider a plaintiff's rejection of a settlement offer as one of several factors generally informing the discretionary inquiry under § 2000e-5(g)(2)(B).[3] Specifically, the Fourth Circuit has noted that "refusing a reasonable offer of settlement promotes few public interests when the plaintiff ultimately receives a less favorable recovery after trial." 88 F.3d at 1337. Defendants made an offer of judgment of $40,000 to plaintiff on August 11, 2010, including offering plaintiff employment in the Counseling Center at ECU as a substance abuse counselor. (DE # 147-3 p. 13). The position appears to have had a salary of approximately $55,000. (Id.).

Plaintiff argues that defendants made much less valuable offers once plaintiff expressed a genuine interest in negotiating a resolution to the dispute, though plaintiff fails to cite a more beneficial offer previously made. Plaintiff argues that the position defendants offered as substance abuse counselor was one she was not qualified by training or education to perform. The email

---

[3] The parties argued in the briefs over the propriety of plaintiff's offering as exhibits certain settlement discussions. The court finds the exhibits relevant to the instant inquiry, and expresses no opinion as to the violation of any agreements for confidentiality made in mediation. The court does note, however, that defendants have not moved to have the exhibits filed under seal, and therefore proceeds with its analysis, relying on the same.

9

exhibits attached to plaintiff's motion illustrate plaintiff's desire for other positions at the university, specifically a tenure track position in the school of social work. (DE # 147-3 p. 15). The emails also reveal that plaintiff appears to have be unwilling to consider a salary below $61,812.00, the amount plaintiff was earning when she left ECU. (DE # 147-3 p. 11).

As to this issue, the parties are particularly divided, each characterizing the settlement offers and negotiations differently. Plaintiff contends that her negotiating posture never reflected a monetary demand over the defendants' offer of judgment, but rather plaintiff focused on reinstatement, making considerable efforts to resolve the litigation prior to trial. Defendants contend that they made good faith efforts to resolve the dispute with the offer described above, and that consideration of this issue should weigh against plaintiff with regard to the motion for fees.

The court is inclined to agree with defendants. Plaintiff was presented with what appears to be a reasonable settlement offer, which included not only reinstatement in a specific position at ECU, but also a significant monetary award. The monetary award is made more significant by the fact that plaintiff recovered no damages at trial. While plaintiff argues that the defendant's offer of reinstatement was for a position for which she was not qualified (substance abuse counselor), this assertion conflicts with the evidence provided by plaintiff that she desired a position "specializing in the area of substance abuse" in the school of social work. (See DE # 147-3). The court acknowledges that the positions are undoubtedly different in certain ways, but considering the settlement offer as a whole, under the proportionality that Sheppard counsels, the court finds that plaintiff's rejection of defendants' settlement offer does not weigh in favor of granting attorney's fees.

Balancing all of the above, and keeping in mind that attorney's fees in mixed motive cases

10

are determined at the discretion of the district court, the court finds that attorney's fees are warranted. In coming to this conclusion, the court has specifically considered that plaintiff had limited success on her claims and the significance of the jury's finding that defendant ECU used impermissible factors in the decision not to grant plaintiff tenure. The court has weighed plaintiff's limited success, with the fact that the case was not novel or one of first impression, and most significantly, that plaintiff rejected a reasonable offer of settlement, which offer was for a financial sum and equitable remedy far exceeding what the jury verdict rendered.

    2.    Calculation

Having found that plaintiff is entitled to attorney's fees, the court now calculates the appropriate amount. Defendants do not dispute that the Supreme Court case, Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) abrogated on other grounds by Tex. States Teachers Assoc. v. Garland Indep. Sch. Dist., 489 U.S. 782 (1989), sets forth the general standards to determine the appropriate award of attorney's fees. The court has the discretion to determine the amount of a fee award. Mercer, 301 F.Supp.2d at 466 (citing Hensley, 461 U.S. at 436). To determine the appropriate amount of a fee award, the district court should first identify the "number of hours reasonably expended on the litigation" and multiply that number by a reasonable rate. 461 U.S. at 433. The court then subtracts fees for hours spent on unsuccessful claims unrelated to the successful ones. Id. at 435. Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending upon the degree of success achieved by the plaintiff. Id. However, considering all this, under Hensley, a plaintiff's complaint "cannot be viewed as a series of discrete claims" if the claims "involve a common core of facts or [are] based

11

on related legal theories." Hensley, 461 U.S. at 435; see also Certain v. Potter, 330 F Supp.2d 576, 583 (M.D.N.C. 2004).

To determine the reasonable rate and reasonable number of hours in calculating the lodestar, the court is guided by twelve factors as set forth in a Fifth Circuit case, Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989). The Fourth Circuit has cited these factors, which include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994) (citing Johnson, 488 F.2d at 717–19). Some, but not all of the factors are discussed here, because relevant information as to each factor has not been provided.

Defendants do not dispute plaintiff's contentions regarding the time and labor required to litigate the case, the novelty and difficulty of the questions, the level of skill required, the amount involved or results obtained, the experience and ability of plaintiff's counsel, or the length of the attorney-client relationship. Plaintiff's counsel submitted affidavit describing her nearly thirteen years of experience, detailing that she has handled numerous cases before state administrative agencies, North Carolina state courts, and federal courts involving issues of discrimination. (DE # 147-3 pg. 1). Prior to the instant case, plaintiff's counsel appeared as first chair or alone in approximately seven jury trials that have been litigated to a verdict. (Id.). The instant case was not

12

particularly complex, however, the case involved multiple claims and significant discovery, including several depositions. From inception to jury verdict, the case spanned approximately four years.

As to the hourly rate, plaintiff has submitted affidavits from six attorneys who practice in this district in a similar practice area, whose experience ranges from seven to thirty-five years and whose hourly rate ranges from $200.00 to $300.00 per hour. Based on its review of these materials, the court finds that counsel's hourly rate of $220.00 is appropriate. See Rum Creek, 31 F.3d at 175 ("A reasonable hourly rate is defined as the prevailing market rate in the relevant community") (citations omitted).[4]

To determine the appropriate award, the court must consider the hourly rate multiplied by hours spent on successful claims. Plaintiff contends that the claims arose from a common core of facts and are based on related legal theories. Because of how intertwined plaintiff's claims were, she contends that the attorney billing records do not provide for easy allocation of hours on any one particular claim. Considering plaintiff's claims and the legal theories advanced for each, and after a thorough review of the exhibits offered in support of the instant motion, the court agrees that plaintiff's claims for sex discrimination and discrimination under the FMLA were so closely related to her § 1983 claims and claims for damages that a parsing of attorney hours worked for the separate claims would be a guessing game, at best.[5]

---

[4] In opposing the hourly rate of $220.00, defendants offered evidence that counsel for plaintiff represents another client in an administrative hearing before the Office of State Personnel at a significantly lower hourly rate. The court agrees with plaintiff that this representation is distinct from the instant case, and this evidence does not alter the court's determination.

[5] While counsel's work statement of time and billing records (DE # 147-1) might benefit from more detail, the court does note that plaintiff's counsel attempted to indicate hours worked on non-Title VII matters. These numbers are
(continued...)

13

Considering the closely related nature of plaintiff's claims and by extension, how closely related the work done in furtherance of those claims was, the court cannot delineate specific hours worked on those claims on which plaintiff enjoyed limited success and which claims were not successful. As such, the court considers overall plaintiff's success to determine what amount of fees is appropriate. The court agrees with plaintiff that because plaintiff enjoyed only limited success, a downward adjustment from the lodestar amount of $100,411.96 is appropriate,[6] which amount reflects an hourly rate of $220.00 per hour.

Exercising its discretion, the court finds that based on the determinations made herein regarding plaintiff's limited success, specifically the general proportionality considerations the court has made regarding the public purpose advanced by the litigation, the novelty of the claims, and plaintiff's rejection of a settlement offer, the appropriate downward adjustment is one of fifty (50) percent, resulting in an award of attorney's fees of $50,205.98. See Miller v. Pilgrim's Pride Corp., 2007 WL 2570219 (W.D. Va. Aug. 31, 2007) (in a FMLA mixed motive case with closely intertwined claims, deducting fifty percent from the lodestar amount); see also Certain v. Potter, 330 F.Supp.2d 576, 592 (M.D.N.C. Aug. 4, 2004) (in a case where the claims were not closely intertwined and court could determine hours spent on specific claims, court deducted twenty (20) percent of attorney hours based on limited success on certain claims, effectively reducing the requested amount of attorney's fees by fifty (50) percent).

---

[5](...continued)
helpful, but since plaintiff also enjoyed limited success on her FMLA claim, the court cannot determine which of the non-Title VII hours were also non-FMLA hours. This factor affirms the court's finding that plaintiff's claims and the work done in furtherance of the same are too interrelated to account for specific time spent on specific claims.

[6] Defendants do not object to plaintiff's calculation of the lodestar amount, with the exception of the hourly rate, previously discussed.

14

Accordingly, plaintiff's motion for attorney's fees in the amount of $75,308.97 is denied, however the motion is granted in part where the court finds an award of $50,205.98 is appropriate. Where plaintiff has also moved for taxation of costs, the court refers that portion of the motion to the Clerk for determination, as defendants have similarly moved for costs in this action and their motion is being considered by the Clerk.

B.  Motion for Declaratory Judgment and to Alter/Amend the Judgment

Plaintiff, in separate motion, asks the court to enter declaratory judgment pursuant to 42 U.S.C. § 2000e-5(g)(2)(B) declaring defendant ECU's employment practices to have been in violation of the law. In the alternative, plaintiff asks the court to alter or amend the judgment, entered February 17, 2012, to accurately reflect the jury's verdict on plaintiff's Title VII claim.

Congress vested courts with broad authority to fashion appropriate relief in Title VII cases. See, e.g., Local 28 of Sheet Metal Workers' Intern. Ass'n v. EEOC, 478 U.S. 421, 446 (1986). The decision to grant or deny declaratory relief is a matter for the trial court's discretion. See 42 U.S.C. § 2000e-5(g)(2)(B). However, the trial court's discretion must be exercised in a manner consistent with the purposes of the Civil Rights Act. See Franks v. Bowman Transp. Co., Inc., 424 U.S. 747, 770-71 (1976). Two related but distinct purposes underlie the Act, to eradicate discrimination and achieve equal employment opportunities, and to make whole victims of discrimination. Franks, 424 U.S. at 763-64.

Some courts have done what plaintiff requests here, granted simple declaratory judgments that a particular defendant discriminated against a particular plaintiff in a mixed motive case. See Miller, 2007 WL 2570219 at *3 (in ADA and FMLA case after jury verdict finding that discrimination occurred but that defendant would have made same decision, plaintiff was entitled

15

to declaratory judgment that plaintiff was terminated in violation of the ADA); Dehne v. Medicine Shoppe Intern., Inc., 261 F.Supp.2d 1142, 1148 (E.D. Mo. 2003) (granting declaratory relief in a mixed motive case that defendant discriminated against the plaintiff because of plaintiff's disability); Stevens v. Gravette Medical Ctr. Hosp., 998 F.Supp. 1011, 1015 (W.D.Ark. 1998) (finding that plaintiff was entitled to a declaration that defendant violated Title VII with respect to its treatment of plaintiff).

As plaintiff points out, plaintiff did seek declaratory relief in the complaint. Compl. ¶ V.1.b. Notably, defendants offer no opposition to plaintiff's request for a declaratory judgment, but focus their opposition only on plaintiff's alternative request for relief, that the judgment be altered pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. Additionally, plaintiff's request, in effect, does little more than simply affirm the jury's verdict.

Where defendants lodge no objection, and the applicable statute clearly provides that the declaratory judgment requested here is within the court's discretion to grant, the court finds no reason not to grant the relief plaintiff seeks. As such, the court will grant plaintiff's request for a declaration that sex was a motivating factor in defendant ECU's decision to deny plaintiff tenure and promotion, and that plaintiff's exercise of her rights under the FMLA was a motivating factor in defendant ECU's decision to deny her tenure and promotion, in violation of the law. Because the court has granted the relief plaintiff sought, there is no need to address plaintiff's alternative request for relief to alter or amend the judgment, which request is denied.

## CONCLUSION

For the reasons set forth above, plaintiff's motions for attorney's fees and costs (DE # 147) is GRANTED in part and DENIED in part. The motion is denied as to the amount requested by

16

plaintiff, but granted to the extent that the court finds an award of $50,205.98 in attorney's fees is appropriate. Plaintiff's motion for costs is REFERRED to the Clerk for consideration with defendants' motion for costs, lodged on the docket at entry 151.

Plaintiff's motion for declaratory judgment or to alter or amend the judgment (DE # 155) is similarly GRANTED in part where the court enters declaratory judgment reflecting the jury's findings, as set forth herein. The motion is DENIED in part to the extent plaintiff requests alternative relief in the form of altering or amending the judgment.

SO ORDERED, this the 8th day of August, 2012.

LOUISE W. FLANAGAN
United States District Judge

17

Case 4:09-cv-00126-FL  Document 159  Filed 08/10/12  Page 17 of 17